JUDITH DANIELS *et al.*, Indiv. and on Behalf of All Other Similarly Situated Career Service Employees, Plaintiffs-Appellants, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (6th Division)   No. 1—94—3050

Opinion filed February 2, 1996.

Kathrin A. Koenig and Mildred F. Haggerty, both of Haggerty, Koenig & Hill, Chartered, of Chicago, for appellants.

Patricia J. Whitten and Dianna L. Mitchell, of Board of Education of City of Chicago, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs Judith Daniels and Myrtle Rowan appeal the dismissal of their complaint seeking compensation for vacation days accrued but not taken during their former employment with the defendant Board of Education of the City of Chicago. Plaintiffs brought their complaint pursuant to section 5 of the Illinois Wage Payment and Collection Act. 820 ILCS 115/5 (West 1992). Defendant moved to dismiss for lack of subject matter jurisdiction. Defendant argued that plaintiffs, as members of a collective bargaining agreement, were obligated to exhaust their remedies under that agreement before instituting a court action for accrued vacation pay. The trial court granted defendant's motion to dismiss. We reverse and remand.

Plaintiffs were among a group of career service employees for the Board of Education (the Board) who were terminated from employ-

ment on October 8, 1992. In 1993, plaintiffs filed a two-count complaint against the Board. Count I sought to represent the class of similarly situated employees who had also lost their jobs due to a reduction in force in October 1992. Count II sought compensation for accrued vacation days not taken by plaintiffs prior to their termination from employment.

In count II, plaintiffs alleged that they were members of a collective bargaining agreement that provided for paid vacation days during the Christmas and spring recesses. Plaintiffs further alleged that the Wage Payment and Collection Act (the Wage Payment Act) requires the payment of final compensation, including accrued vacation time, to terminated employees. 820 ILCS 115/5 (West 1992). According to plaintiffs, defendant refused to pay plaintiffs the monetary value of their accrued vacation at the time of their termination in violation of the Wage Payment Act.

In count II, plaintiffs relied on the following section of the Wage Payment Act:

"Final compensation—Vacation Pay—Time for payment

§ 5. Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. ***

Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation." 820 ILCS 115/5 (West 1992).

Plaintiffs also quoted the following language from the article of their collective bargaining agreement entitled "Vacations" and attached the section as an exhibit to their complaint. Article 43—1 of the agreement provided in pertinent part:

"Vacation pay shall be computed on the basis of the following formula:

a. Christmas recess pay for 1990 shall be computed from the number of days an employee was on the payroll from April 30, 1990 through November 23, 1990 according to the following formula:

| | |
|---|---|
| 1-10 days | 0 days vacation pay |
| 11-20 days | 1 day vacation pay |
| 21-40 days | 2 days vacation pay |
| 41-60 days | 3 days vacation pay |
| 61-80 days | 4 days vacation pay |
| 81 days or more | 5 days vacation pay |

Spring vacation pay for 1991 shall be computed from November 26, 1990 through April 19, 1991 according to the above-stated formula.
\*\*\*
c. Christmas recess pay for 1992 shall be computed from the number of days an employee was on the payroll from April 27, 1992 through November 27, 1992 according to the above-stated formula.

Spring vacation pay for 1993 shall be computed from November 30, 1992 through April 23, 1993 according to the above-stated formula."

In count II, plaintiffs asserted that they were on the Board's payroll for 50 or more days between April 27, 1992, and November 27, 1992, and in accordance with the above provision, they earned paid vacation days that they were not compensated for upon their termination on October 8, 1992. In addition, they alleged that they did not and could not file a grievance under their collective bargaining agreement because, while the agreement provided for paid vacation days, it contained no provision covering the payment of the monetary equivalent of earned vacation to terminated employees. Alleging that they had no contractual remedy under the agreement, plaintiffs sought judicial relief and compensatory damages from the Board under section 5 of the Wage Payment Act. 820 ILCS 115/5 (West 1992).

Defendant filed a section 2—619 motion to dismiss plaintiffs' complaint, arguing that the trial court lacked subject matter jurisdiction over the matter. 735 ILCS 5/2—619 (West 1992). The motion set forth that plaintiffs were members of a collective bargaining agreement, that such agreement contained a grievance procedure, and that plaintiffs failed to even attempt to follow that procedure. The Board therefore argued that the court lacked jurisdiction because, by not taking the steps outlined in the grievance procedure of their collective bargaining agreement, plaintiffs had not exhausted their contractual remedies. The trial court granted defendant's motion.

The grievance procedure the Board relies upon is part of the record and is contained in article 3 of the agreement. Under the proce-

dure, a grievance must be filed within 45 days "after the occurrence or event giving rise to the alleged violation." Generally, any grievance filed is initially handled either by a school principal or the office of employee relations. The resulting decision may be appealed to the general superintendent of schools, whose decision may then be appealed only to the American Arbitration Association. The decision of the arbitrator must be rendered within 20 days after completion of the hearing, and such decision "shall be final and binding on the parties." Article 3 defines grievance in the following manner:

> "A grievance is a complaint involving a work situation or a complaint that there is a deviation from, misinterpretation of, or misapplication of a practice or policy; or a complaint that there has been a violation, misinterpretation, or misapplication of any provisions of this Agreement."

On appeal, plaintiffs do not dispute that they were members of the collective bargaining agreement that contained the above grievance procedure. Yet, in arguing that the trial court erred in dismissing their complaint, plaintiffs contend that the subject matter of the current dispute is not covered by the collective bargaining agreement and therefore cannot be fully arbitrated through the grievance procedure. Plaintiffs urge that they are not alleging a violation of the collective bargaining agreement. They are instead alleging a violation of the Wage Payment Act. 820 ILCS 115/5 (West 1992). Specifically, plaintiffs argue that while the agreement outlines the method of calculating the number of paid vacation days earned by an employee, it is the Wage Payment Act, and not the agreement, that grants plaintiffs the right to the monetary equivalent of their accrued vacation days upon termination.

Plaintiffs urge that the Board has not and cannot point to any provision in the agreement that covers this dispute. Therefore, according to plaintiffs, defendant's argument that plaintiffs were required to exhaust their contractual remedies before seeking judicial relief does not apply. Defendant, however, stands by its argument that this dispute arose under the collective bargaining agreement and that plaintiffs were therefore obligated to file a grievance. Defendant maintains that plaintiffs' failure to initiate or exhaust the grievance procedure in the collective bargaining agreement was fatal to their claim for judicial relief.

It is well recognized that arbitration is a uniquely suitable procedure for settling labor disputes. *Lodge No. 822, International Ass'n of Machinists & Aerospace Workers Union v. City of Quincy*, 137 Ill. App. 3d 425, 484 N.E.2d 464 (1985). To further the use of arbitration, Illinois courts have held that where a collective bargaining agree-

ment establishes a grievance and arbitration procedure for disputes arising out of the agreement, an employee alleging a violation of the agreement must at least attempt to exhaust his or her contractual remedies before seeking judicial relief. *Uehlein v. Shwachman,* 156 Ill. App. 3d 274, 509 N.E.2d 493 (1987); *Meeks v. South Bend Freight Lines, Inc.,* 85 Ill. App. 3d 755, 407 N.E.2d 228 (1980).

Nevertheless, the mere existence of a dispute between an employer and employee is insufficient to make the matter in dispute subject to the arbitration procedures of a collective bargaining agreement. *Metropolitan Distributors, Inc. v. Illinois Department of Labor,* 114 Ill. App. 3d 1090, 449 N.E.2d 1000 (1983); *Croom v. City of De Kalb,* 71 Ill. App. 3d 370, 389 N.E.2d 647 (1979). In determining whether a member's exclusive remedy is to follow the grievance and arbitration procedure outlined in an agreement, a court must consider whether the claim is one which on its face is governed by the contract. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343 (1960); *Lodge No. 822,* 137 Ill. App. 3d 425, 484 N.E.2d 464.

In the present case, the Board relies primarily on the line of cases holding against plaintiffs who failed to exhaust their contractual remedies before seeking judicial relief. *Uehlein,* 156 Ill. App. 3d 274, 509 N.E.2d 493; *Patterson v. Carbondale Community High School District No. 165,* 144 Ill. App. 3d 254, 494 N.E.2d 240 (1986); *Meeks,* 85 Ill. App. 3d 755, 407 N.E.2d 228. Plaintiffs, on the other hand, urge that their situation is more comparable to those cases in which courts found the disputes not subject solely to arbitration because the claims were statutory and not covered by the respective agreements. *Semmens v. Board of Education of Pontiac Community Consolidated School District No. 429,* 190 Ill. App. 3d 174, 546 N.E.2d 746 (1989), *appeal after remand,* 215 Ill. App. 3d 407, 574 N.E.2d 1341 (1991); *Lodge No. 822,* 137 Ill. App. 3d 425, 484 N.E.2d 464; see also *Metropolitan Distributors,* 114 Ill. App. 3d 1090, 449 N.E.2d 1000; *Croom,* 71 Ill. App. 3d 370, 389 N.E.2d 647.

We agree with plaintiffs that the requirement of exhausting contractual remedies is inapplicable to the present case. While it is true that interpretation of the collective bargaining agreement is necessary to determine the amount of paid vacation full-time employees of the Board have earned, plaintiffs' claim for the monetary equivalent of vacation days they accrued prior to their termination from employment has not arisen under the agreement. The Board has pointed only to the method of calculating vacation days in article 43—1 and to the grievance procedure outlined in article 3. Yet, defendant has failed to point to any provision in either of these articles

that addresses the topic of compensating terminated employees for accrued vacation days. Section 5 of the Wage Payment Act, on the other hand, deals directly with the issue. As stated earlier, the second paragraph of section 5 provides:

"Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation." 820 ILCS 115/5 (West 1992).

Mindful that the primary rule of statutory construction is to ascertain and give effect to the intention of the legislature (*Mueller Co. v. Department of Labor*, 187 Ill. App. 3d 519, 543 N.E.2d 518 (1989)), our reading of this paragraph is that section 5 of the Wage Payment Act would defer to a collective bargaining agreement that set forth a method of compensating terminated employees for accrued paid vacation days. The collective bargaining agreement at issue here, however, is apparently silent on the issue. Consequently, the language, "[u]nless otherwise provided for in a collective bargaining agreement," is inapplicable here because the Board has pointed to no other provision in the agreement that does provide otherwise. Put another way, we agree with plaintiffs that, although their right to paid vacation arises from their collective bargaining agreement, any right they may have to the monetary value of their vacation days accrued prior to their termination from employment arises under section 5 of the Wage Payment Act.

The case of *Uehlein v. Shwachman*, 156 Ill. App. 3d 274, 509 N.E.2d 493 (1987), relied on heavily by the Board, does not compel a different conclusion. The plaintiff in *Uehlein*, a janitor and a member of a collective bargaining agreement, brought an action for wages against his former employer. Count I of Uehlein's complaint sought compensation for wages allegedly due for usual duties under the agreement. Counts II and III sought compensation for wages earned pursuant to an oral contract with his employer to perform work not normally performed by a janitor. The trial court dismissed the complaint on the grounds that Uehlein failed to exhaust the grievance and arbitration procedures of the collective bargaining agreement. Plaintiff appealed, arguing that he had standing to bring the suit under the Wage Payment Act. This court affirmed the trial court's

dismissal of the complaint, holding that all of plaintiff's claims were covered by the collective bargaining agreement and sought no relief outside the scope of the arbitrator's authority. Specifically, counts II and III fell under a provision of the agreement that set forth procedures for assigning a janitor special duties not of a janitorial nature and for negotiating with the union the wages a janitor would be paid for performance of such extra duties. This court thus concluded:

> "Since plaintiff's complaint arises entirely out of the collective bargaining agreement, he lacks standing to pursue this action without first exhausting his remedies pursuant to the agreement." *Uehlein*, 156 Ill. App. 3d at 277, 509 N.E.2d at 495.

Contrary to *Uehlein*, plaintiffs' complaint here does not arise entirely out of the collective bargaining agreement. Even though the plaintiff in *Uehlein* framed his complaint pursuant to the Wage Payment Act, his claims essentially alleged violations of specific provisions of the collective bargaining agreement. In this case, however, defendant has not pointed to any provision in the collective bargaining agreement that covers plaintiffs' claim for accrued vacation. While the collective bargaining agreement does set forth the formula for calculating the number of paid vacation days earned by full-time employees, it does not reach the subject matter of this dispute, *i.e.*, compensating former full-time employees for accrued vacation days. Thus, requiring plaintiffs to file a grievance and to exhaust their contractual remedies is fruitless here since this dispute did not arise entirely under the collective bargaining agreement and it is certainly not clear, as it was in *Uehlein*, that this dispute can be fully resolved through the grievance and arbitration procedures of such agreement.

Accordingly, we find that plaintiffs' complaint was improperly dismissed for lack of subject matter jurisdiction. The judgment of the circuit court of Cook County dismissing plaintiffs' complaint is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

ZWICK, P.J., and RAKOWSKI, J., concur.